IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Wildcat Retro Brands LLC, | ) | C/A No. 8:20-cv-04207-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| NWL Distributing LLC, Vetta LLC, | ) | **OPINION AND ORDER** |
| Blue Point Capital Partners LLC, | ) | |
| Keybank LLC, Amazon.com Sales LLC, | ) | |
| Lakeshirts Inc, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Keybank LLC's ("Keybank") Motion to Dismiss for Lack of Jurisdiction, Defendant Vetta LLC's ("Vetta") Motion to Dismiss for Lack of Jurisdiction and Motion to Strike, Defendant Blue Point Capital Partners LLC's ("Blue Point") Motion to Dismiss for Lack of Jurisdiction and Motion to Strike, and Defendant Lakeshirts Inc.'s ("Lakeshirts") Motion to Dismiss for Lack of Jurisdiction. ECF Nos. 34, 38, 40, 60, 62, 63. Plaintiff filed a Response in Opposition to Lakeshirts' Motion to Dismiss and the Motions to Strike.[1] ECF Nos. 61, 67. Vetta and Blue Point filed

---

[1] In the Motions to Strike, Vetta and Blue Point argue that Plaintiff's Response in Opposition was filed out of time on June 2, 2021, with respect to the Motions to Dismiss filed by Keybank, Vetta, and Blue Point, and Plaintiff did not request an extension. ECF Nos. 62-1 at 3–5, 63-1 at 3–5; see Local Civil Rule 7.06 (D.S.C.) ("Any memorandum or response of an opposing party must be filed with the court within fourteen (14) days of the service of the motion unless the court imposes a different deadline. If no memorandum in opposition is filed within fourteen (14) days of the date of service, the court will decide the matter on the record . . . ."); ECF Nos. 34, 38, 40 (noting a response to the motions were due by April 26, 2021). In Plaintiff's Response in Opposition to the Motions to Strike, Plaintiff agrees that it did not request an extension to respond to Vetta and Blue Point's Motions and clarifies that it only filed a response to Lakeshirts' Motion.

Replies to Plaintiff's Responses.  ECF Nos. 64, 65, 68, 69.  The Motions are now before the Court.

## BACKGROUND

The following statement of facts is drawn from the allegations of the Complaint.  *See* ECF No. 1.  For several years prior to the events that gave rise to Plaintiff's claims, Plaintiff supplied goods for sale to Defendant NWL Distributing, LLC ("NWL").  *Id*. ¶ 12.  Plaintiff sold goods to NWL on credit, and NWL arranged for shipping of the purchased goods either to its facility in Greenwood, South Carolina for subsequent sale on Defendant Amazon.com Sales LLC's ("Amazon") website or directly to Amazon's warehouses.  *Id*. ¶ 13.  The purchased goods were sold on Amazon's website under NWL's trade name "Elite Fan Shop."  *Id*.

In May and June of 2020, Plaintiff received large orders from NWL for custom-printed facemasks and neck gaiters along with other apparel.  *Id*. ¶ 15.  The orders were placed with a request for expedited manufacture and shipment between June 1, 2020, and August 2020.  *Id*.  Based on NWL's assurance of payment, including a written schedule of future payments, Plaintiff extended further credit to NWL.  *Id*. ¶ 16–17.  Meanwhile, however, Vetta and/or Blue Point were exercising their control over NWL[2] to transfer its excessive liquid assets to Vetta and ultimately to Blue Point.  *Id*. ¶ 18.  This transfer left NWL "significantly underfunded and without cash to pay its obligations," but

---

ECF No. 67 at 4.  Accordingly, the Court has only considered Plaintiff's Response with respect to Lakeshirts' Motion to Dismiss.  Plaintiff's explanation that its Response was only to Lakeshirts' Motion renders Vetta and Blue Point's Motions to Strike moot.

[2] Plaintiff alleges that Vetta is the "parent company" and "sole member" of NWL, and that Blue Point "appoints and controls the management team of Vetta and directs its development structure and . . . its day to day operational dec[i]sions."  ECF No. 1 ¶ 3–4.

NWL was directed to continue ordering and purchasing large quantities of inventory. *Id*. In or around July 2020, Keybank, a lender to Vetta, took control of Vetta pursuant to agreements with Blue Point and operated the company in an attempt to secure repayment of its loans. *Id*. ¶ 21.

In August 2020, at the direction of Keybank, NWL refused two of Plaintiff's shipments and informed Plaintiff that it had been directed to cancel all additional orders. *Id*. ¶ 22. In addition to the refused shipments of custom-printed goods, Plaintiff had already manufactured pieces of additional goods pursuant to NWL's orders. *Id*.

Keybank subsequently sold NWL, with the consent and agreement of Blue Point and/or Vetta's board of directors, to creditor Lakeshirts under an agreement that failed to provide for the payment of NWL's obligations to Plaintiff. *Id*. ¶ 24. In full or partial consideration of the cancellation of NWL's obligations to Lakeshirts, Lakeshirts received Plaintiff's delivered and unpaid-for goods as well as the trade name Elite Fan Shop and the rights to do business with Amazon. *Id*. ¶ 25. Lakeshirts was aware at the time of purchase that Plaintiff had not been paid for its goods. *Id*. ¶ 26. Meanwhile, in August and September of 2020, NWL's officers and employees continued to assure Plaintiff that their obligations would be paid and that legal action was unnecessary. *Id*. ¶ 27.

Plaintiff alleges a claim for Tortious Interference with a Contract against Keybank, Vetta, and Blue Point. Plaintiff further alleges a claim for Successor Liability against Lakeshirts.[3] Keybank, Vetta, Blue Point, and Lakeshirts move for dismissal for lack of

---

[3] Plaintiff's claims for violation of the purported "Unfair Trade Practices Act" against all Defendants were dismissed without prejudice on May 6, 2021, based upon Plaintiff's failure to respond to the Court's 14-day deadline and its finding that the claim was subject to dismissal as no private right of action exists under 15 U.S.C. § 45. ECF Nos. 45, 54.

3

personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2).[4]  ECF Nos. 34, 38, 40, 60.

## APPLICABLE LAW

When "a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence relevant to the jurisdictional issue, but rather relies on the complaint and affidavits alone, 'the burden on the plaintiff is simply to make a prima facie showing of sufficient jurisdictional basis in order to survive the jurisdictional challenge.'" *In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997) (quoting *Combs*, 886 F.2d at 676).  "If the existence of jurisdiction turns on disputed factual questions[,] the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a defendant challenges the Court's personal jurisdiction under Rule 12(b)(2) after discovery has been conducted and the relevant evidence has been presented to the Court, the plaintiff has the burden of proving that jurisdiction exists by a preponderance of the evidence.  *In re Celotex Corp.*, 124 F.3d at 628; *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016).  "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d

---

[4] Keybank also moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) and alternatively addresses the merits of Plaintiff's claims.  ECF No. 34.  Lakeshirts also moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(3).  ECF No. 60 at 10.

4

390, 396 (4th Cir. 2003) (citing *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993)). Additionally, "'[i]n reviewing the record before it, a court may consider pleadings, affidavits, and other evidentiary materials without converting the motion to dismiss to a motion for summary judgment.'" *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306 (D.S.C. 1992) (quoting *VDI Techs. v. Price*, 781 F. Supp. 85, 87 (D.N.H. 1991)).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. Fed. R. Civ. P. 4(k)(1)(A). Thus, "for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citing *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 134 (4th Cir. 1996)).

South Carolina's long-arm statute provides as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's: (1) transacting any business in this State; (2) contracting to supply services or things in the State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; (5) having an interest in, using, or possessing real property in this State; (6) contracting to insure any person, property, or risk located within this State at the time of contracting; (7) entry into a contract to be performed in whole or in part by either party in

5

> this State; or (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803(A).  "South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997) (citations omitted).  "Consequently, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'"  *Id.* (quoting *Stover*, 84 F.3d at 135–36).  The central constitutional question the Court must address is whether the defendant has established "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

Viewed through this constitutional lens, personal jurisdiction may arise through specific jurisdiction, which is based on the conduct alleged in the lawsuit, or through general jurisdiction.  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).  Under general jurisdiction, when a defendant has "continuous and systematic" contacts with the forum state, the defendant "may be sued in [the forum] state for any reason, regardless of where the relevant conduct occurred."  *Id.* (citations omitted).  When the defendant is a corporation, "general jurisdiction requires affiliations 'so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State,' *i.e.*, comparable to a domestic enterprise in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 159 n.11 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

*General Jurisdiction*

In recent years, the Supreme Court has significantly narrowed the reaches of general personal jurisdiction. In *Daimler AG v. Bauman*, the Supreme Court clarified that general jurisdiction over corporate defendants will only exist in three circumstances: (1) in the forum where the defendant is incorporated; (2) in the forum where the defendant has its principal place of business; and (3) in a forum where a "corporation's affiliations with the [forum] are so continuous and systematic as to render [it] essentially at home in the forum State." 571 U.S. 117, 138–39 (2014) (internal quotations omitted).

However, "in an exceptional case, a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.19). Indeed, the Court can exercise general personal jurisdiction over foreign corporations "if the foreign corporation is a parent company with a subsidiary that is subject to the court's general personal jurisdiction and if the subsidiary functions as the agent or mere department of the parent in a manner that justifies treating it as an alter ego and/or piercing the corporate veil." *Wright v. Waste Pro USA Inc.*, 2019 WL 3344040, at *4 (D.S.C. July 25, 2019) (internal quotations and citations omitted). "South Carolina courts recognize two tests that will subject a parent corporation to the court's personal jurisdiction through its subsidiary—alter ego and piercing the corporate veil." *Id.* at *5 (citing *Builder Mart of Am., Inc., v. First Union Corp.*, 563 S.E.2d 352, 358 (S.C. Ct. App. 2002), *overruled on other grounds by Farmer v. Monsanto Corp.*, 579 S.E.2d 325 (S.C. 2003)).

"In determining whether to exercise jurisdiction based on the alter-ego theory, the court must find the following factors: (1) common ownership; (2) financial independence;

7

(3) degree of selection of executive personnel and failure to observe corporate formalities; and (4) the degree of control over marketing and operational policies." *Id.* "It is essential that *all four factors be present with sufficient factual specificity* to confer jurisdiction on [] courts." *Id.*

South Carolina's two-prong test for piercing the corporate veil includes (1) "an eight factor analysis of the shareholder's relationship to the corporation and looks to the observance of the corporate formalities by the dominant shareholders" and (2) requires a plaintiff to prove 'an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the individuals.'" *Dumas v. InfoSafe Corp.*, 463 S.E.2d 641, 643–44 (S.C. Ct. App. 1995) (citing *Sturkie v. Sifly*, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984)); *see also DeWitt Truck Brothers v. W. Ray Flemming Fruit Co.*, 540 F.2d 681, 686–87 (4th Cir. 1976). "The factors are: (1) whether the corporation was grossly undercapitalized; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder." *Dumas*, 463 S.E.2d at 644; *see DeWitt*, 540 F.2d at 686–87. "To prove fundamental unfairness, the plaintiff must establish that (1) the defendant was aware of the plaintiff's claim against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property." *Dumas*, 463 S.E.2d at 644.

*Specific Jurisdiction*

In contrast, under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to their contacts with South Carolina and those contacts were sufficient. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted). Each prong must be satisfied. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278–79 (4th Cir. 2009). This analysis focuses on the relationship between the defendant, the forum, and the litigation; therefore, the Supreme Court has emphasized "[t]wo related aspects of this necessary relationship." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "First, the relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* (internal quotation omitted) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Second, [the] minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation omitted) (citing *Int'l Shoe Co.*, 326 U.S. at 319).

## DISCUSSION

### I. Keybank's Motion to Dismiss for Lack of Jurisdiction

In its Motion to Dismiss, Keybank contends that the Court lacks general personal jurisdiction. It is undisputed that Keybank is incorporated under the laws of the State of

9

Ohio and is headquartered in Cleveland, Ohio. *See* ECF No. 34-1 at 7. As such, the only way this Court can have general personal jurisdiction over Keybank is if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139.

Plaintiff did not respond to the Motion; however, in the Complaint, Plaintiff alleges that Keybank "has been a lender to Vetta and exercised its right to closely monitor the financial performance and operation of Blue Point or Vetta, eventually taking control of Vetta." ECF No. 1 at 2. Plaintiff alleges that "[t]hrough the control and monitoring of Blue Point or Vetta, Keybank caused injury in South Carolina." *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to show that Keybank's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. Keybank provides the affidavit of Scott Saber, Senior Relationship Manager in the Asset Recovery Group at Keybank. He avers that Keybank is a banking association chartered under Federal law, does not maintain any retail bank branches in South Carolina, and does not own real estate or lease real property in South Carolina. ECF No. 34-2 at 3. He states that Keybank has approximately seventeen employees and fourteen contractors who work remotely in South Carolina, but this arrangement is for their personal convenience and not required by Keybank. *Id.* Those employees and contractors were also not involved in any way with Plaintiff. *Id.* Mr. Saber further states that Keybank's credit agreement and supporting loan documents with NWL and Vetta are governed by Ohio law, and Keybank's Cleveland Middle Market group, which worked with Vetta and its subsidiaries in executing the documents, does not have

10

any employees or offices in South Carolina. *Id.* He also maintains that none of Keybank's actions as a secured lender and first-priority lienholder have or will occur in South Carolina, and none of Keybank's agents or employees have ever met with Plaintiff, or its agents, in person in South Carolina, in connection with the sale of NWL's assets to Lakeshirts or any other matter. *Id.* at 4. As Plaintiff has not responded to this Motion, the Court looks to the Complaint, which fails to set forth any allegations that Keybank's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. Accordingly, the Court finds that it does not have general jurisdiction over Keybank. Therefore, the Court turns to the question of specific jurisdiction.

Keybank contends the Court lacks specific personal jurisdiction because it did not engage in any activities with respect to Plaintiff's contract with NWL in South Carolina. ECF No. 34-1 at 9. Plaintiff failed to respond to Keybank's Motion, and Plaintiff's Complaint fails to allege that Keybank "purposefully availed itself of the privilege of conducting activities in the State." *ALS Scan, Inc.*, 293 F.3d at 712. Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to demonstrate that specific jurisdiction exists over Keybank. *See Walden*, 571 U.S. at 284 (holding that claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state" (quoting *Burger King*, 471 U.S. at 475)). Thus, Plaintiff has failed to establish this Court has general or specific jurisdiction over Keybank, and the claim against it must be dismissed. Because the ruling on this claim is dispositive of the Motion, the Court need not address Keybank's alternative arguments.

**II. Vetta's Motion to Dismiss for Lack of Jurisdiction**

In its Motion to Dismiss, Vetta contends that the Court lacks general personal jurisdiction. It is undisputed that Vetta is incorporated under the laws of the State of Ohio, is headquartered in Ohio, and has its principal place of business in Ohio. *See* ECF No. 38-1 at 4. As such, this Court can have general personal jurisdiction over Vetta only if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139.

Plaintiff did not respond to the Motion; however, in the Complaint, Plaintiff alleges that Vetta "is the parent company of NWL and upon information and belief its sole member at all relevant times." ECF No. 1 at 2. Thus, Plaintiff alleges that Vetta has caused injury in South Carolina. *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds Plaintiff has failed to show that Vetta's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. Vetta provides the affidavit of Timothy Stallkamp, its Chief Administrative Officer. ECF No. 38-2. He avers that Vetta is a limited liability company organized under the laws of the State of Michigan. *Id.* at 1. He states that Vetta's headquarters and its principal place of business are located in Ohio. *Id.* Mr. Stallkamp further provides that Vetta has no offices, employees, or agents in South Carolina, and it does not send agents into South Carolina to conduct business. *Id.* at 1–2. He states that Vetta does not have a registered agent for service of process in South Carolina, Vetta owns no property in South Carolina, Vetta does not initiate business in South Carolina, and Vetta has no customers in South Carolina. *Id.* at 2. Finally, with respect to Plaintiff, Mr. Stallkamp

avers that Vetta has no contracts with Plaintiff, Vetta has no business relationship with Plaintiff, Vetta has not made in-person contact with Plaintiff regarding any prospective business relationship, and Vetta has not solicited business from Plaintiff has had no communications with Plaintiff regarding transacting business. *Id.*  The Court finds these facts fail to establish that Vetta's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.

However, Plaintiff also claims general personal jurisdiction exists over Vetta as the parent company of NWL.  ECF No. 1 at 2.  In its Complaint, Plaintiff alleges that

> Blue Point and/or Vetta directed its subsidiary corporation NWL to begin to transfer excessive liquid assets to Vetta and ultimately Blue Point leaving the entities lower down the chain including NWL significantly underfunded and without sufficient cash to pay its obligations while, concurrently, NWL was directed to order and purchase additional large quantities of inventory for which it did not have the cash flow or liquidity to cover.

*Id.* at 4.  Although Plaintiff alleges that Vetta owned NWL and exercised control over NWL during the relevant period, Plaintiff has failed to allege financial independence or the degree of selection of executive personnel and failure to observe corporate formalities. *See Wright*, 2019 WL 3344040, at *5 ("It is essential that *all four factors be present with sufficient factual specificity* to confer jurisdiction on [] courts.").  Therefore, the Court finds that Vetta is not subject to the Court's general personal jurisdiction through the alter-ego theory.[5]  Accordingly, the Court finds that it does not have general jurisdiction over Vetta. Thus, the Court turns to the question of specific jurisdiction.

---

[5] The Court has also considered the requirements for piercing the corporate veil. *See Dumas*, 463 S.E.2d at 643–44; *see also DeWitt*, 540 F.2d at 686–87.  The Court finds Plaintiff has failed to allege any of the eight factors nor proved fundamental unfairness as required.

13

Vetta contends the Court lacks specific jurisdiction because it has not purposefully availed itself of the privilege of conducting business in South Carolina, Plaintiff's claims do not arise out of Vetta's activities directed at South Carolina, and the exercise of personal jurisdiction over Vetta would not be constitutionally reasonable.  ECF No. 38-1 at 4.  Plaintiff failed to respond to Vetta's Motion, and Plaintiff's Complaint fails to allege that Vetta "purposefully availed itself of the privilege of conducting activities in the State." *ALS Scan, Inc.*, 293 F.3d at 712.  Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to demonstrate that specific jurisdiction exists over Vetta.  *See Walden*, 571 U.S. at 284 (holding that claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state" (quoting *Burger King*, 471 U.S. at 475)).  Thus, Plaintiff has failed to establish this Court has general or specific jurisdiction over Vetta, and the claim against it must be dismissed.

### III.  Blue Point's Motion to Dismiss for Lack of Jurisdiction

In its Motion to Dismiss, Blue Point contends that the Court lacks general personal jurisdiction.  It is undisputed that Blue Point is incorporated under the laws of the State of Delaware, is headquartered in Ohio, and has its principal place of business in Ohio.  *See* ECF No. 40-1 at 4.  As such, this Court can have general personal jurisdiction over Blue Point only if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See Daimler AG*, 571 U.S. at 139.

Plaintiff did not respond to the Motion; however, in the Complaint, Plaintiff alleges that Blue Point "is an equity capital investor in Vetta and appoints and controls the management team of Vetta and directs its development structure and upon information

14

and belief, its day to day operational dec[i]sions." ECF No. 1 at 2. Plaintiff further claims that "Vetta operates out of Blue Point's Shanghai offices". *Id.* Thus, Plaintiff alleges that Blue Point has caused injury in South Carolina. *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds Plaintiff has failed to show that Blue Point's contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. Blue Point provides the affidavit of Jeffery Robich, Principal of Blue Point. ECF No. 40-2. Mr. Robich avers that Blue Point is a limited liability company organized under the laws of the State of Delaware. *Id.* at 1. He states that Blue Point's headquarters and its principal place of business are located in Ohio. *Id.* He further provides that Blue Point has no offices, employees, or agents in South Carolina, and it does not send agents into South Carolina to conduct business. *Id.* at 1–2. Mr. Robich states that Blue Point does not have a registered agent for service of process in South Carolina, Blue Point owns no property in South Carolina, Blue Point does not initiate business in South Carolina, and Blue Point has no customers in South Carolina. *Id.* at 2. Finally, with respect to Plaintiff, Mr. Robich avers that Blue Point has no contracts with Plaintiff; Blue Point has no business relationship with Plaintiff, Blue Point has not made in-person contact with Plaintiff regarding any prospective business relationship, and Blue Point has not solicited business from Plaintiff and has had no communications with Plaintiff regarding transacting business. *Id.* Accordingly, the Court finds that it does not have general jurisdiction over Blue Point. Therefore, the Court turns to the question of specific jurisdiction.

Blue Point contends the Court lacks specific jurisdiction because it has not purposefully availed itself of the privilege of conducting business in South Carolina, Plaintiff's claims do not arise out of Blue Point's activities directed at South Carolina, and the exercise of personal jurisdiction over Blue Point would not be constitutionally reasonable.  ECF No. 40-1 at 5.  Plaintiff failed to respond to Blue Point's Motion, and Plaintiff's Complaint fails to allege that Blue Point "purposefully availed itself of the privilege of conducting activities in the State."  *ALS Scan, Inc.*, 293 F.3d at 712.  Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to demonstrate that specific jurisdiction exists over Blue Point.  *See Walden*, 571 U.S. at 284 (holding that claims to which specific jurisdiction will attach "must arise out of contacts that the 'defendant himself' creates with the forum state" (quoting *Burger King*, 471 U.S. at 475)).  Thus, Plaintiff has failed to establish this Court has general or specific jurisdiction over Blue Point, and the claim against it must be dismissed.

**IV.  Lakeshirts' Motion to Dismiss for Lack of Jurisdiction**

In its Motion to Dismiss, Lakeshirts contends the Court lacks general personal jurisdiction.  ECF No. 60-1 at 4.  It is undisputed that Lakeshirts is incorporated under the laws of the State of Minnesota and maintains its principal place of business in Detroit Lakes, Minnesota.  *Id.*  As such, this Court can have general personal jurisdiction over Lakeshirts only if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina.  *See Daimler AG*, 571 U.S. at 139.

Plaintiff alleges Lakeshirts "purchased the assets of NWL including the delivered and unpaid for goods at issue together with the trade name Elite Fan Club and its rights to do business with Defendant Amazon."  ECF No. 1 at 2; *see also* ECF No. 61 at 2.

16

Specifically, Plaintiff claims Lakeshirts "was a creditor of NWL and received such assets in full or partial consideration of the cancellation of NWL's then existing obligations." ECF No. 1 at 5. Therefore, Plaintiff contends Lakeshirts has caused injury in South Carolina. *Id.* at 2–3.

Having reviewed the arguments and submissions of the parties, the Court finds Plaintiff has failed to show that Lakeshirts' contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina. *See Daimler AG*, 571 U.S. at 139. Lakeshirts provides the affidavit of Michael D. Hutchinson, co-Chief Executive Officer of Lakeshirts. ECF No. 60-2. Mr. Hutchinson avers that he and Mr. Mark T. Fritz are the only members of Lakeshirts and are both fulltime residents and citizens of the State of Minnesota. *Id.* at 1. He states that Lakeshirts is a limited liability company formed and existing under the laws of the State of Minnesota with its principal place of business in Detroit Lakes, Minnesota. *Id.* at 2. He further provides that Lakeshirts does not own or lease real property or maintain any offices in South Carolina and does not have any employees in South Carolina. *Id.* He states that Lakeshirts does not have a registered agent for service of process in South Carolina and does not engage in significant or long-term business activities in South Carolina of any kind or nature. *Id.* With respect to Plaintiff, Mr. Hutchinson avers that Lakeshirts has not attempted to create, nor does it have, any contracts or business relationship with Plaintiff, and none of Lakeshirts' agents or employees have made in-person contact with Plaintiff regarding Lakeshirts' purchase of assets from NWL. *Id.* Finally, he states that the contract between Lakeshirts and NWL is governed by the laws of the State of Delaware and did not require the execution or performance of any acts or duties within South Carolina. *Id.* Accordingly,

17

the Court finds that it does not have general jurisdiction over Lakeshirts.  Therefore, the Court turns to the question of specific jurisdiction.

Lakeshirts contends the Court lacks specific personal jurisdiction because it has not purposefully availed itself of the privilege of conducting business in South Carolina.  ECF No. 60-1 at 7.  Specifically, Lakeshirts argues it does not engage in any significant or long-term business activities in South Carolina, it does not own or lease real property in South Carolina, it does not have any employees working in South Carolina, and it does not have an agent designated to accept service in South Carolina.  *Id.*

In response, Plaintiff claims that Lakeshirts "markets directly to citizens of South Carolina by selling college apparel for Clemson University, Coastal Carolina, and University of South Carolina some of which were manufactured by [Plaintiff] and sold to NWL."  ECF No. 61 at 4.  Plaintiff also contends that Lakeshirts has two sales representatives that work in South Carolina.  ECF Nos. 61 at 4; 61-4 (showing LinkedIn profiles of two individuals listing Lakeshirts as an employer).  Thus, Plaintiff claims the nature of Lakeshirts' business makes contacts with the State reasonably foreseeable and establishes personal jurisdiction.  ECF No. 61 at 5.

Having reviewed the arguments and submissions of the parties, the Court finds that Plaintiff has failed to demonstrate that specific jurisdiction exists over Lakeshirts.  Specifically, Plaintiff has neither alleged purposeful conduct in South Carolina sufficient to hale Lakeshirts into court here nor has it supported its allegations with evidence of jurisdictional facts.  Although Plaintiff alleges that Lakeshirts markets and sells South Carolina collegiate apparel to citizens in this State, this allegation does not establish that Lakeshirts has purposefully availed itself of the privilege of conducting activities in the

State. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 945 (4th Cir. 1994) ("To permit a state to assert jurisdiction over any person in the country whose product is sold in the state simply because a person must expect that to happen destroys the notion of individual sovereignties inherent in our system of federalism."). Rather, the minimum contacts analysis looks to Lakeshirts' contacts with the forum state itself, not its contacts with persons who reside there. *See Walden*, 571 U.S. at 284 (citing *Int'l Shoe Co.*, 326 U.S. at 319). Regarding Lakeshirts' contacts with the forum state, Plaintiff does not dispute that Lakeshirts does not maintain offices or agents in South Carolina, does not own property in South Carolina, does not engage in significant or long-term business activities in South Carolina, and has not made in-person contact with Plaintiff in South Carolina regarding any business relationship. *See Consulting Eng'rs*, 561 F.3d at 278 (providing a nonexclusive list of factors for courts to consider whether a defendant has engaged in purposeful availment).

Further, Plaintiff alleges that Lakeshirts has two sales representatives who work in South Carolina based on the individuals' LinkedIn profiles, and the Court views this disputed fact and its reasonable inferences in the light most favorable to Plaintiff. ECF No. 61 at 4; *see Carefirst of Md., Inc.*, 334 F.3d at 396 ("In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."). Even assuming Plaintiff's allegation that Lakeshirts has employees working in South Carolina is true, Plaintiff has not submitted any evidence that its claim arises out of the activities conducted by those employees in this State.[6] *Cf.*

---

[6] Because the first two prongs of the three-part specific personal jurisdiction test have not been satisfied, the Court need not address whether the exercise of personal jurisdiction would be constitutionally reasonable.

*Shire LLC v. Mickle*, 2011 WL 607716, at *3 (W.D. Va. Feb. 11, 2011) (noting the plaintiff alleged that the defendant's employees were engaging in conduct in the forum state that injured the plaintiff and finding this jurisdictional fact sufficient to support specific personal jurisdiction). Therefore, because there is no evidence to indicate that Lakeshirts has "created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state," Plaintiff has failed to make a prima facie showing of sufficient jurisdictional basis. *Lesnick*, 35 F.3d at 945–46; *see In re Celotex Corp.*, 124 F.3d at 628. Accordingly, Plaintiff has failed to establish this Court has general or specific jurisdiction over Lakeshirts, and the claim against it must be dismissed. Because the ruling on this claim is dispositive of the Motion, the Court need not address Lakeshirts' alternative arguments.

## CONLUSION

For the reasons set forth above, Defendant Keybank's Motion to Dismiss for Lack of Jurisdiction [34], Defendant Vetta's Motion to Dismiss for Lack of Jurisdiction [38], Defendant Blue Point's Motion to Dismiss for Lack of Jurisdiction [40], and Defendant Lakeshirts' Motion to Dismiss for Lack of Jurisdiction [60] are **GRANTED**. Defendant Vetta's Motion to Strike [62] and Defendant Blue Point's Motion to Strike [63] are **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

February 24, 2022
Spartanburg, South Carolina